TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 89-505 |
| of | : | |
| | : | AUGUST 31, 1989 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE BOB EPPLE, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1.      Can the Chief Probation Officer of a county prohibit an off-duty deputy probation officer from carrying a concealed firearm?

2.      Must a deputy probation officer obtain a license to carry a concealed firearm?

CONCLUSIONS

1.      A County Chief Probation Officer's authority, limited as it is to employment related conduct, cannot prohibit an off-duty deputy probation officer from carrying a concealed firearm.

2.      Holding the status of a duly appointed peace officer a deputy probation officer need not obtain a license to carry a concealed firearm.

ANALYSIS

The Chief Probation Officer of a county and his or her deputies are given the status of peace officers by section 830.5 of the Penal Code.[1]  In this opinion we analyze several questions concerning the power of deputy probation officers to carry concealed firearms.

Section 830.5, as material to our consideration herein, provides:

---

[1]All section references are to the Penal Code unless otherwise indicated.

"The following persons are peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment and for the purpose of carrying out the primary function of their employment or as required under Sections 8597, 8598, and 8617 of the Government Code. <u>Except as specified in this section, these peace officers may carry firearms only if authorized and under those terms and conditions specified by their employing agency</u>:

"(a)     A parole officer of the Department of Corrections or the Department of the Youth Authority, probation officer, or deputy probation officer or a board coordinating parole agency employed by the Youthful Offender Parole Board. . . . A parole officer of the Department of Corrections, the Department of the Youth Authority, or the Youthful Offender Parole Board is authorized to carry firearms but only as determined by the director on a case-by-case or unit-by-unit basis and only under those terms and conditions specified by the director or chairperson.

        ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c)     The following persons may carry a firearm while not on duty:  a parole officer of the Department of Corrections or the Department of the Youth Authority, a correctional officer employed by the Department of Corrections or any employee of the Department of the Youth Authority having custody of wards or any employee of the Department of Corrections designated by the Director of Corrections.  A parole officer of the Youthful Offender Parole Board may carry a firearm while not on duty only when so authorized by the chairperson of the board and only under the terms and conditions specified by the chairperson.  Nothing in this section shall be interpreted to require licensure pursuant to Section 12025.  The director or chairperson may deny or revoke for good cause a person's right to carry a firearm under this subdivision.  That person shall, upon request, receive a hearing, as provided for in the negotiated grievance procedure between the exclusive employee representative and the Department of Corrections, the Department of the Youth Authority, or the Youthful Offender Parole Board, to review the director's or the chairperson's decision."

        ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

        Accordingly, certain <u>state</u> correctional and parole officers, and county probation officers and deputy probation officers are designated by this section as peace officers. These section 830.5 peace officers "may carry firearms only if authorized and under those terms and conditions specified by their employing agency" "except as specified" in section 830.5.[2]  Finally, it is seen that section 830.5 sets forth certain terms and conditions under which the designated <u>state</u> peace officers may carry firearms, particularly off-duty, but is completely silent with respect to county probation officers or deputy probation officers as a distinct class, while on duty or off- duty.

        In addition to section 830.5, sections 12025 and 12027 are material to a determination whether the designated peace officers may carry concealed weapons.  Section 12025 generally prohibits carrying concealed on one's person or in a vehicle any firearm capable of being concealed, unless licensed to do so pursuant to section 12050 et seq.  Section 12027, however, excepts from the

---

[2]We assume herein that the chief probation officer is acting with the authority and on behalf of the "employing agency."

12025 proscription, "[a]ny peace officer, listed in Section 830.1 or 830.2, whether active or honorably retired, [and, <u>inter alia</u>,] <u>other duly appointed peace officers</u>. . . ." (Emphasis added.)

1.     Carrying A Concealed Firearm Off-Duty

The first question presented is whether the Chief Probation Officer of a county may prohibit an off-duty probation officer from carrying a concealed firearm. We conclude that the Chief Probation Officer cannot do so. We so conclude despite the language of section 830.5 indicating that these peace officers may carry firearms only "under those terms and conditions specified by their employing agency."

In 70 Ops.Cal.Atty.Gen. 20 (1987) we were presented with the question whether a district attorney [the employing agency] had the authority to prohibit or allow the carrying of firearms by welfare fraud investigators while off-duty. Such officers are designated as peace officers pursuant to section 830.31 of the Penal Code. We were confronted with language similar to that presently found in section 830.5. Thus, section 830.31 then provided that "[s]uch peace officers may carry firearms only if authorized and under such terms and conditions specified by their employing agency." Relying heavily upon our opinion in 65 Ops.Cal.Atty.Gen 527 (1982), we concluded that the just-quoted language gave the employing agency the authority to regulate the carrying of firearms only with respect to employment-related conduct. Accordingly, we concluded that the district attorney could not regulate the carrying of firearms by welfare fraud investigators while off duty.

In 65 Ops.Cal.Atty.Gen. 527 (1982), *supra*, we were presented with the question whether the Chief of the California State Police Division had the authority to prohibit or allow security officers of that division to carry concealed firearms while off-duty. Such security officers are designated as peace officers pursuant to section 830.4 which provided in 1982 that "[s]uch peace officers may carry firearms only if authorized by and under such terms and conditions as are specified by their employing agency." In concluding that this language did not authorize the Chief of the State Police Division to prohibit or allow security officers of that division to carry firearms, we reasoned as follows:

"The extent of the authority granted to the employing agency by the third sentence of section 830.4 is significant. By declaring `such peace officers may carry firearms <u>only if</u> authorized. . .' the statute prohibits the carrying of firearms without the requisite authorization. Thus, the employing agency is empowered to prohibit the carrying of firearms by its security officers by simply withholding its authorization as well as to authorize them to carry firearms `under such terms and conditions' as it specifies. Further the authority granted extends to the carrying of any firearm including shotguns and rifles, not just handguns. The reason for authorizing an employing agency to control the carrying of firearms by its employees at a facility operated by the agency or at any place where the employees are acting within the scope and in the course of their employment is apparent. However, we see no reason why the employing agency would need or want to control the carrying of firearms by its peace officer employees at times and places unrelated to their employment. If the power granted the employing agency by the third sentence of section 830.4 is construed to extend to any time and place it would mean that the designated officers would need the authorization of their employing agency to carry rifles on hunting trips or even national guard training exercises. Further, such control would extend only to the designated officers and not to the nonpeace officer employees of the agency. We believe that the Legislature did not intend to grant the employing agency any such control over the nonemployment related conduct of its

security officers. By granting the authority to the `employing agency' we think the Legislature meant it to apply only to employment related conduct. Such limitation is also suggested by the words `under such terms and conditions as are specified' since an employer's authority to impose terms and conditions on an employee's conduct is normally limited to the latter's employment related conduct. Thus we interpret the provision to be applicable only to employment related situations, i.e., to the carrying of firearms at the place of employment subject to control by the employing agency and to the carrying of firearms by the employee any place while acting within the scope and in the course of his or her employment." (*Id,.* at p. 533. Emphasis in original.)

In 65 Ops.Cal.Atty.Gen. 527 (1987), *supra*, we additionally noted that there were situations where the law places responsibilities upon peace officers as a class which are not usually related to their employment. As to such types of responsibilities, we reasoned:

"In most cases a peace officer's powers and duties are related to his peace officer employment. However, there are some responsibilities which the Legislature has given peace officers generally which do not usually relate their peace officer employment. Section 142 requires 'any peace officer' to receive custody of a person who has been arrested by a private person. (See 64 Ops.Cal.Atty.Gen. 886, 892-894.) Business and Professions Code section 25619 provides that `every peace officer' shall enforce the provisions of the Alcoholic Beverage Control Act and shall inform against persons whom they have reasonable cause to believe offend against its provisions. Failure to perform either of these responsibilities is made a misdemeanor by the statutes. There are other such statutes applicable to peace officers generally. (See, e.g., Health and Saf. Code, § 4477, and Fish and G. Code, § 10508.) Section 836 authorizes peace officers generally to make arrests in specified circumstances which need not relate to their peace officer employment duties. (See *People* v. *Derby*, *supra*, 177 Cal.App.2d 626.) When acting pursuant to such statutes in a manner unrelated to their peace officer employment, such officers are not subject to any rules imposed by their employing agencies since such agencies have no power to limit or change these statutorily created powers and duties. (64 Ops.Cal.Atty.Gen. 886.) We believe this applies to rules relating to the carrying of concealed firearms." (*Id.*, at pp. 533-534.)

Our opinions in 70 Ops.Cal.Atty.Gen. 20 (1987), *supra*, and 65 Ops.Cal.Atty.Gen. 527 (1982), *supra*, construe statutes similar to section 830.5 which is applicable to probation officers, except that section 830.5 contains several statutory differences which reflect the actions of the 1982 Legislature. In 1982 the Legislature substituted "except as specified in this section, these peace officers may carry" for the prior language "such peace officer may carry" in the introductory clauses; added the third sentence to subdivision (a) with respect to state parole officers, and added subdivision (c) with respect to the off-duty use of firearms by State Department of Corrections and Youth Authority peace officers.[3]

Do these differences dictate a different result as to county probation officers than that reached by us in 1987 with respect to district attorney investigators and in 1982 with respect to State Police Division security officers? In our view they do not.

---

[3]Minor amendments not relevant to our consideration herein were also made in 1988 with respect to the carrying of firearms by parole officers of the Youth Offender Board. (Stats. 1988, ch. 942.)

Analysis of these amendments discloses that they were apparently enacted in response to our opinion in 64 Ops.Cal.Atty.Gen. 832 (1981) wherein we analyzed the authority of the Director of Corrections to regulate the carrying of firearms by State Department of Correction employees. Thus, the amendments were intended to govern when the state peace officers designated in section 830.5 may carry firearms off-duty. These amendments have the effect of restricting the authority of the Director of Corrections to regulate the carrying of firearms by its peace officers while outside the prison and off-duty. Accordingly, in our view these amendments were in no way intended by the Legislature to affect the authority of a Chief Probation Officer of a county to regulate the authority of his or her deputies to carry firearms either on or off duty. This being so, the general principles set forth by us in 70 Ops.Cal.Atty.Gen. 20 (1987) and 65 Ops.Cal.Atty.Gen. 527 (1982), *supra*, would still be applicable to deputy probation officers and their employing agency, the Chief Probation Officers. These are that the employing agency has no interest in or authority to prohibit or allow such peace officers to carry concealed firearms while off-duty. Their authority in this regard is governed by sections 12025 and 12027.

Accordingly, we conclude on question one that the Chief Probation Officer of a county may not prohibit his or her deputies from carrying concealed weapons while off duty.[4]

### 2. The Question of a License.

The second question presented is whether a deputy probation officer must obtain a license pursuant to section 12050 to carry a concealed firearm. This question is answered in the negative by section 12027. Section 12027 exempts peace officers from license requirements.

Under the provisions of section 830.5 probation officers are "peace officers" at all times. In prior opinions we have pointed out the distinction between the "status" of peace officer and the "authority" of a peace officer and that both need not exist at the same point in time. (See generally, 65 Ops.Cal.Atty.Gen. 527 (1982) *supra*,; 65 Ops.Cal.Atty.Gen. 618, 626 (1982).) Applying this distinction to section 830.5 peace officers, we see from the introductory paragraph that they are "peace officers whose authority extends to any place in the state while engaged in the performance of their duties, etc. . . . ." (Emphasis added.) Accordingly, under the wording of section 830.5, they have the "status" of a peace officer without any time limitation, thus at all times, although they have the authority of a peace officer only while engaged in the performance of their duties, etc. The "while" clause modifies their authority, not their status. (See also Opinion No. 89-203, 72 Ops.Cal.Atty.Gen. ___ (1989).)

We conclude that probation officers are "peace officers" within the meaning of section 12027. Accordingly, since they are peace officers at all times, they are exempt from the proscriptions of section 12025 at all times. (Cf. 70 Ops.Cal.Atty.Gen. 20 (1984), *supra*; 65 Ops.Cal.Atty.Gen. 527 (1982), *supra*; 63 Ops. Cal.Atty.Gen. 385 (1980).)

\* \* \* \* \*

---

[4]In so concluding we note, however, the general provisions of section 1126 of the Government Code which permits a local agency to prohibit off-duty conduct of its officers and employees "for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties. . . . " (Emphasis added.)